ATLANTIC COAST LINE R. CO. et al. v. INTERSTATE COMMERCE COMMISSION (UNITED STATES et al., Interveners).

(Commerce Court, December 5, 1911.)

No. 3.

**1.** COMMERCE (§ 93*)—INTERSTATE COMMERCE COMMISSION—SUITS TO ANNUL ORDERS—PARTIES.

Interstate carriers who, although not parties to proceedings before the Interstate Commerce Commission, nor named in an order made by the commission fixing rates on a commodity between certain points, are competitors of the carriers named therein in such traffic and therefore necessarily affected by the order, have such an interest therein as entitles them to maintain a suit to enjoin its enforcement, and, while they may properly apply to the commission for a rehearing, such action is not a necessary condition precedent to such a suit.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 144; Dec. Dig. § 93.*]

**2.** COMMERCE (§ 93*)—INTERSTATE COMMERCE COMMISSION—SUIT TO ANNUL ORDERS—PARTIES.

Any party against whom an order fixing rates is made by the Interstate Commerce Commission may petition the court for redress without joining other parties to the order; such suit being plenary, and the injury, if any, being several and not joint.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 144; Dec. Dig. § 93.*]

**8.** COMMERCE (§ 94*)—INTERSTATE COMMERCE COMMISSION—SUIT TO ANNUL ORDER—PLEADING.

In a suit by carriers to annul an order of the Interstate Commerce Commission fixing rates on the ground that such rates are confiscatory and unconstitutional, in that they are not "reasonably compensatory," and would not produce enough revenue to pay the actual cost of the service and a "reasonable profit," the bill should allege facts in support of such conclusions, such as the amount of revenue derived from the traffic affected, and so far as possible the cost of the service, or other facts from which the court can determine for itself whether the rates fixed are reasonably compensatory, and would produce a reasonable profit.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 94.*]

**4.** COMMERCE (§ 85*)—INTERSTATE COMMERCE COMMISSION—POWERS—FIXING RATES.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 15, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 (U. S. Comp. St. Supp. 1909, p. 1158), which requires the Interstate Commerce Commission "whenever, after full hearing upon a complaint made * * * it shall be of the opinion that any rates or charges whatsoever demanded, charged or collected by any common carrier or carriers subject to the provisions of this act * * * are unjust or unreasonable * * * to determine and prescribe what will be a just and reasonable rate," it is only when the "opinion" of the commission results from the full hearing that it can be used as the basis of further action; and, while it is the duty of the members of the commission to call to their aid their expert knowledge and experience in forming their opinion, they have no authority to make a finding that an existing rate is unjust or unreasonable, except on evidence of which the carrier is apprised, and has been given an opportunity to meet.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

194 F.—29

5. COMMERCE (§§ 94, 97*)—INTERSTATE COMMERCE COMMISSION—SUIT TO AN-
NUL ORDER—PLEADING.

In a suit by carriers to annul an order of the Interstate Commerce
Commission declaring an existing rate unjust and unreasonable and es-
tablishing a lower rate, an allegation in the bill that there was no evi-
dence before the commission to show the unreasonableness of the exist-
ing rate or the reasonableness of the one prescribed is an allegation of
fact and sufficient as a matter of pleading, but whether or not there is
at the close of a final trial any evidence to sustain the findings of the
commission is a question of law, which the court has jurisdiction to de-
termine.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. §§ 94, 97.*]

Petition by the Atlantic Coast Line Railroad Company and others
against the Interstate Commerce Commission, respondent, the United
States, the M. C. Kiser Company, and the J. K. Orr Shoe Company,
interveners. On demurrer to bill and motion to dismiss. Motion to
dismiss and general demurrer overruled. Special demurrer sustained
in part.

For report of Interstate Commerce Commission, see 17 Interst.
Com. R. 430.

Alfred P. Thom, R. Walton Moore, Frank W. Gwathmey, and
John K. Graves, for petitioners.

James A. Fowler and Blackburn Esterline, for the United States.

P. J. Farrell, for Interstate Commerce Commission.

William A. Wimbish, for M. C. Kiser Co. and J. K. Orr Shoe Co.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT,
CARLAND, and MACK, Associate Judges.

CARLAND, Judge. March 31, 1910, petitioners filed their bill in
the United States Circuit Court for the Eastern District of Virginia
against the Interstate Commerce Commission for the purpose of hav-
ing an order of said commission, dated November 27, 1909, and ef-
fective April 1, 1910, wherein it was found that the rail and water
rate of Central of Georgia Railway Company, Southern Railway Com-
pany, Seaboard Air Line Railway Company and the receivers thereof,
Atlantic Coast Line Railroad Company, Ocean Steamship Company,
and Merchants' & Miners' Transportation Company of $1.05 per 100
pounds for the transportation of less than car load shipments of
boots and shoes from Boston and New York to Atlanta, Ga., to the
extent that it exceeded 95 cents per 100 pounds, was unreasonable,
unjust, and unduly discriminatory, suspended, and annulled. The
order also required the said companies to cease and desist on or be-
fore April 1, 1910, and for a period of not less than two years there-
after abstain from charging, collecting, or receiving the rate so held
to be unlawful, and to establish on or before April 1, 1910, and main-
tain for a period of two years thereafter, a charge for the transporta-
tion of less than car load shipments of boots and shoes by water and
rail from Boston and New York to Atlanta, Ga., a rate which should
not exceed 95 cents per 100 pounds.

The commission answered the bill in the United States Circuit

Court, and the M. C. Kiser Company and the J. K. Orr Shoe Company, having been allowed to intervene, filed their several demurrers in said court. Subsequently the case was transferred to this court, and the United States, having here been allowed to intervene, filed its motion to dismiss under the statute. The case is now, after argument, submitted for decision upon the demurrer of the M. C. Kiser Company and J. K. Orr Shoe Company, and the motion of the United States to dismiss. The motion to dismiss so far as it goes covers the same grounds as the demurrer. The demurrer, however, being both general and special, specifies as grounds of demurrer other matters not specifically mentioned in the motion to dismiss. It would seem proper, therefore, to consider the motion to dismiss and the demurrer together.

Speaking in a general way, the bill presents two grounds of attack upon the order of the commission: First, that the rate of 95 cents per hundred pounds established by the order for the transportation of boots and shoes from Boston and New York to Atlanta is so unreasonably low as to deprive petitioners of a right guaranteed to them by the fifth amendment to the Constitution of the United States in that their property will be taken for a public use without just compensation; and, second, that said order, while in form within the powers of the commission, was such an irregular and unreasonable exercise of authority as to render it void. The demurrer being special and directed to particular paragraphs of the bill, it will be necessary to consider the grounds of the demurrer separately.

[1] It is specified as a ground of demurrer that the Georgia Railroad, the Norfolk & Western Railway Company, Clyde Steamship Company, and Old Dominion Steamship Company were not parties to the proceeding before the commission which resulted in the making of the order complained of, and that, therefore, there is a misjoinder of petitioners. It is alleged, however, in paragraphs 4 and 11 of the bill that the petitioners are and have been for at least 10 years participating in the rail and water transportation of boots and shoes from Boston and New York to Atlanta, and the manner in which this traffic moves is pointed out. It is also alleged that the volume of traffic to which the reduction of rates required by the order complained of, if enforced, will by the terms thereof apply, is very large, and will necessarily and inevitably cause corresponding reductions not only by such of the petitioners as are named in said order, but by the other petitioners as well, in all such less than car load rail and water rates on boots and shoes from all the other New England and Eastern ports to Atlanta and practically to all other Southeastern points, and that the volume of such traffic to which such reductions will necessarily apply is tremendous in amount, and that the revenues of all of the petitioners will be greatly and seriously impaired if the order is allowed to remain in effect.

From these allegations admitted by the demurrer it appears that the petitioners last above named have sufficient interest in the rail and water rate to be made parties to the suit. Peavy v. Union Pacific Company (C. C.) 176 Fed. 409, affirmed by Supreme Court November 13, 1911, 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. ——.

[2] Another ground of demurrer is that the Ocean Steamship Company of Savannah and the Merchants' & Miners' Transportation Company were parties defendant to the complaint and proceedings before the commission which resulted in the making of the order complained of, and therefore this court can grant no relief without their presence.

It is a sufficient answer to this contention to say that this case is not an appeal or writ of error where all parties against whom the decree or judgment is rendered must join in the appeal or writ, or in lieu thereof a summons or severance must be had, but it is a plenary suit in equity, and certainly any party against whom an order establishing rates is made may petition this court for redress without joining other parties to the order; the injury, if any, being several, and not joint. Peavy v. Union Pacific Company, supra.

Paragraph 10 of the bill is demurred to upon the ground that the petitioners therein named, to wit, the Georgia Railroad, Norfolk & Western Railway Company, Clyde Steamship Company, and Old Dominion Steamship Company were not necessary parties to the complaint before the commission; and if they, as carriers participating in the traffic affected, have any just cause of complaint, such complaint may and should be presented to the commission, which is authorized by law to grant rehearings and to modify its orders. While we think it is entirely proper for parties against whom an order has been made to apply to that body for a rehearing, we know of no rule that makes it a condition precedent to the bringing of a suit in this court for the purpose of setting aside the order. Peavy v. Union Pacific Company, supra.

Paragraph 11 of the bill is demurred to upon the ground that it fails to state the volume of the traffic affected, the revenues derived therefrom, and to what extent these revenues will be affected by the enforcement of the order complained of, and upon the further ground that the bill fails to state what reductions in other rates will necessarily and inevitably follow the enforcement of the order, by what carriers, and between what points such reductions would be made, and the extent of such reductions. The only purpose of paragraph 11 is to show that the carriers which are complainants in this proceeding and which were not parties before the commission have such an interest in the controversy as entitles them to be made complainants, and we think the paragraph is sufficiently specific for that purpose.

Paragraph 13 of the bill is demurred to upon the ground that no facts are stated to support the conclusion that in establishing the rates and charges condemned in the order complained of the complainants were not making or giving any undue or unreasonable preference or advantage to any shipper, locality, or description of traffic, or subjecting any special locality or description of traffic to any undue or unreasonable prejudice or disadvantage.

As the commission condemned the rates which were complained of only because they were unreasonably high, the allegations in paragraph 13 would seem to be irrelevant, and for this reason we do not stop to consider whether it is sufficiently specific or not, but will sustain the demurrer thereto.

Paragraph 16 is demurred to upon the ground that a mere conclusion of law is pleaded, and no facts are alleged showing wherein the enforcement of the order in question will deprive the complainants or either of them of any right guaranteed by the Constitution of the United States. An inspection of said paragraph shows that it is mere argument and therefore is bad on demurrer.

Paragraph 18 is demurred to upon the ground that it is hypothetical, and upon the further ground that in order to support the general conclusion therein pleaded the bill should show the amount of revenue necessary and sufficient for the maintenance of complainants as common carriers in the discharge of their duties to the public, and to what extent such revenue would be affected by the readjustment of rates upon a basis as low as that prescribed by the order complained of. We think the demurrer is well taken, as there is nothing to show the extent to which the carrier would be compelled to construct and apply its other rates upon the basis of the rates named in the order complained of.

Paragraphs 20 and 21 are demurred to upon the ground that no facts are alleged in support of the general conclusion therein pleaded. An examination of said paragraphs has convinced us that the demurrer as to these paragraphs should be overruled.

Paragraph 22 of the bill is demurred to upon the ground that the facts therein alleged do not support the allegation that the order complained of is based upon an erroneous theory. We think the paragraph is sufficient as against the demurrer. We do not now, however, decide whether it is material or not.

Paragraph 23 is demurred to upon the ground that the facts therein pleaded are immaterial to any issue in the case. An inspection of said paragraph convinces us that the demurrer is well taken.

Paragraphs 24, 25, and 26 are demurred to upon the ground that the facts therein alleged do not support the conclusions reached. As paragraph 24 is clearly irrelevant and immaterial, the demurrer thereto will be sustained. It is held in Interstate Commerce Commission v. Chicago, Rock Island & Pacific Railway, 218 U. S. 88, 30 Sup. Ct. 651, 54 L. Ed. 946, that railroads can complain of rates which affect their revenue, but not as to how they affect shippers and places. The demurrer to paragraphs 25 and 26 is overruled for the reason that, assuming said allegations to be material, they sufficiently set forth facts with reference to the matters therein pleaded.

[3] Assuming, but not deciding, that a violation of the fifth amendment to the Constitution of the United States may be based upon an order which establishes a rate on a single article or commodity, we proceed to examine the allegations of the bill upon which it is sought by the pleader to found such a violation. If a case of confiscation is charged at all in the bill, it is contained in paragraphs 12, 14, 15, 17, and 19, which paragraphs are as follows:

"(12) Complainants allege that their rates and charges filed with said commission and now in effect applying to the transportation by rail and water of boots and shoes in less than car load quantities from Boston and New York to Atlanta are just and reasonable charges for the service rendered within the meaning of the act to regulate commerce."

"(14) They show that said rates and charges are not more than reasonably compensatory—that is to say, that the revenue therefrom is not more than sufficient to pay the actual cost of the service rendered in the transportation of said traffic and a'reasonable profit.

"(15) Complainants show that none of their rates or charges, as aforesaid, are unjust, unreasonable, unjustly discriminatory, or unduly preferential or prejudicial, or otherwise in violation of said act, within the meaning of section 15 of said act."

"(17) Complainants show that the rates sought to be established by said order are not just and reasonable rates or charges for the transportation of the property aforesaid, but, on the contrary, are unjust and unreasonably low rates or charges; and complainants allege that the establishment of such rates is in excess of the power and authority of the said defendant commission under the said act to regulate commerce, more particularly section 15 thereof, and that said order is in violation of said act and in contravention of the Constitution of the United States, more particularly the fifth amendment thereof, the benefit and protection of which said act and said amendment the complainants specially claim."

"(19) Complainants show that the rates ordered to be established are less than reasonably compensatory, affording them revenue not sufficient to pay the actual cost of service rendered in the transportation of said traffic and a reasonable profit, thereby violating said act and said amendment to the Constitution of the United States, the benefit and protection of which said act and said amendment the complainants specially claim."

Paragraph 12, above quoted, is demurred to upon the ground that the bill states no facts upon which to found a general allegation that the rates in effect prior to the making of the order complained of were just and reasonable charges for the service rendered and that said paragraph states a mere conclusion without supporting it with allegations of issuable facts.

Paragraph 14 is demurred to upon the ground that the complainants fail to allege the actual cost of the service rendered in the transportation of the traffic affected, or to show the revenue actually derived from such traffic, and also fails to show the amount of the profit derived by the complainants, respectively, from such traffic, or what constitutes a reasonable profit for the service performed.

Paragraph 15 is demurred to upon the ground that no facts are stated upon which to found the conclusion pleaded that none of the rates or charges upon the traffic affected are unjust, unreasonable, unjustly discriminatory, or unduly preferential or prejudicial.

Paragraph 17 is demurred to upon the ground that no facts are pleaded tending to show that the commission in making the order complained of exceeded its power and authority.

Paragraph 19 is demurred to upon the ground that the bill fails to show the cost of the service rendered and the revenue derived therefrom, together with the profit earned thereon, and hence fails to show beyond a doubt that the enforcement of the order complained of will necessarily amount to the taking of petitioners' property without compensation and without due process of law.

We think the demurrer in some of its specifications as to the paragraphs mentioned must be sustained. In determining this question, we must remember that the petitioners are asking this court to enjoin and suspend an order of the commission fixing rates for the future, in the making of which the commission exercises a legislative function. The importance of the judgment we are asked to render

in the matter must not be overlooked. Before we may annul the order, we must be clearly satisfied it is our duty to do so. In view of the character of the order and the importance of our action in reference thereto, we believe that this court is entitled to, and must require of the petitioners, a full and fair statement of all the facts upon which they rely for relief. It is only in rare instances that conclusions of fact or law may be rightly pleaded. The court ought to be permitted so far as possible to draw its own conclusions from the facts stated by the pleader. In the present case we think the pleader should inform the court as to what is meant by the words "reasonably compensatory." What may be "reasonably compensatory" in the opinion of the pleader may not be so in the opinion of the court. Likewise, we think the court should be informed as to what the pleader means by the words "reasonable profit." Perhaps if the pleader should state what he would regard as a "reasonable profit" the bill would be bad on its face. Again, it is alleged that the revenue derived from the transportation of boots and shoes from Boston and New York to Atlanta under the old rate was not more than sufficient to pay the actual cost of the service rendered and a reasonable profit. We think we are entitled to some showing as to what the revenue derived from the traffic is, and, if possible, the cost of service. If the cost of transporting a single commodity cannot be shown, and it seems to be conceded that it is rarely possible to do so, then such other facts in lieu thereof as may make out a violation of the fifth amendment to the Constitution should be stated. We do not say that in cases where cost of service cannot be shown a violation of the fifth amendment may not be made out in other ways, but, when petitioners undertake to plead the items of revenue, cost of service, and profit, we are entitled to more information concerning them than is contained in the bill in this case. Whatever information exists bearing upon the contentions of petitioners is largely in their possession, and in cases of this kind no material information should be withheld, consistent with the rules of good pleading. We are sustained in these views by the decisions in L. & N. Ry. Co. v. Siler (C. C.) 186 Fed. 190, and Southern Pacific Co. v. Campbell (C. C.) 189 Fed. 182.

We now come to consider the second general ground of attack upon the order of the commission, namely, the exercise of power in such an unreasonable manner as to render the order void.

Paragraph 27 is demurred to upon the ground that none of the facts therein alleged tend to support the conclusions pleaded. Said paragraph alleges that the commission took into consideration in making its order certain factors which it is alleged could have no influence with the commission in reaching a proper decision. While we do not wish to be understood as now deciding that the facts set forth in paragraph 27 would render the order complained of void, they are of such persuasive force if true as to cause us at this time to overrule the demurrer as to this paragraph.

Paragraphs 28 and 29 are mere arguments, and as to them the demurrer is sustained.

Paragraphs 30, 31, 32, and 33 are demurred to upon the ground that the commission, being an expert tribunal, appointed by law and

informed by experience, is not limited in its consideration of questions presented to the evidence formally offered and introduced by the parties, but in the exercise of its administrative function it may and should have recourse to all sources of pertinent information, and should apply its expert knowledge and accumulated experience to the determination of the question whether particular rates are or are not just and reasonable.

The paragraphs last above mentioned are as follows:

"(30) Complainants show that the said defendant commission exceeded the authority delegated to it by the said act and erred as a matter of law in the following particular also: They allege that no evidence was introduced before said defendant commission tending to show that a rate of 95 cents per hundred pounds from Boston and New York to Atlanta for the carriage of the traffic involved in the proceeding before said commission was, is, or would be a fair, just, reasonable, or nondiscriminatory rate, or a rate fairly compensatory for the service rendered; and complainants show that the ascertainment of such rate was based, not upon any competent evidence nor upon any evidence, but was the result of mere conjecture, and that said order, based on conjecture, as aforesaid, is in excess of the authority of said commission, and will, if enforced, violate the rights of said complainants under the said act to regulate commerce.

"(31) Complainants allege that the said finding and said order of said commission is unauthorized and erroneous in the following respect: In that it appears from the report of the commission which accompanied the said order that the commission in arriving at its conclusion misapprehended the evidence which was introduced in the said proceeding. The commission was apparently controlled by its belief that complainants and other carriers had voluntarily established and applied for a long period a rate of 85 cents on boots and shoes in less than car loads, whereas complainants aver that said rate of 85 cents was never voluntarily established; that, independent of the action of a court which compelled its application, it was never in force except for a few days; and that its enforcement for a long period was required by a judicial decree which restrained the complainants from charging any higher rate.

"(32) The complainants further show unto your honors that the rates now in effect are just and reasonable rates in themselves. They show that at the hearing before the defendant no evidence was offered, heard, or introduced tending to show that said rates were unreasonable, unjust, or unlawful in and of themselves; that there was no such evidence of the cost of the actual service for which such rates were charged, the value of such service, or as to the various elements which are properly to be considered in determining whether or not a given rate is reasonable in and of itself. Your complainants therefore show that the said order is not based upon evidence tending to show the unreasonableness of the rates in effect, and that in such respects the order is unjust, unreasonable, unlawful, in excess of the authority of said defendant under said act to regulate commerce, and in violation of the Constitution of the United States, more particularly the fifth amendment thereto.

"(33) Complainants show that said order is not based on any finding or conclusion of said defendant that said rates are unjust or unreasonable in themselves for the service involved in said transaction, and complainants show that in this respect said order exceeded the authority of said defendant, and is in violation of said amendment to the Constitution of the United States."

[4] It will be observed that the allegations of the bill are to the effect that there was no evidence offered, heard, or introduced tending to show the existing rates to be unjust, unreasonable, or unlawful in and of themselves, or that a rate of 95 cents per hundred pounds from Boston and New York to Atlanta for the carriage of the traffic

involved would be a fair, just, and reasonable rate. If the contention raised by the demurrer goes so far as to say that the Commission may rely wholly upon their expert knowledge and accumulated experience to condemn an existing rate and establish a new rate for the future in its place, we must hold that the demurrer should be overruled. The commission, in the investigation of any question, may bring to its solution the accumulated experience and expert knowledge of its members, and it would be its duty to do so, but before an existing rate may be condemned there must be a finding of some sort that it is unjust and unreasonable (Interstate Commerce Commission v. Stickney, 215 U. S. 105, 30 Sup. Ct. 66, 54 L. Ed. 112), and this finding must be based upon evidence of which the carrier is apprised so that it may meet the case brought against it if it so desires. Further if it shall be claimed in support of the demurrer that the commission may condemn an existing rate whenever it is of opinion that it is unjust and unreasonable, and that this opinion may be based merely upon the expert knowledge and accumulated experience of its members, then, indeed, is a carrier not only deprived of the equal protection of the law, but of the protection of all law. Certainly the carrier is entitled to some proceeding which may in truth be called due process of law before its property rights may be invaded. The importance of the question raised requires an examination of the statute under which the Commission acts when it decides to establish a rate for the future. Section 15 of the act to regulate commerce, as it stood when the order in this case was made, provided as follows:

"* * * That the commission is authorized and empowered and it shall be its duty whenever after full hearing upon a complaint made as provided in section 13 of this act * * * it shall be of the opinion that any rates or charges whatsoever demanded, charged, or collected by any common carrier or carriers subject to the provisions of this act for the transportation of persons or property as defined in the first section of this act * * * are unjust or unreasonable, or unduly discriminatory, or unduly preferential or prejudicial, or otherwise in violation of the provisions of this act, to determine and prescribe what will be the just and reasonable rate or rates, charge or charges to be thereafter observed in such case as the maximum to be charged."

By the plain language of the law the power of the commission to prescribe a rate for the future cannot be exercised unless after full hearing on complaint made it shall be of the opinion that any of the rates or charges whatsoever demanded, charged, or collected by any common carrier or carriers subject to the provisions of the act, for the transportation of persons or property as defined in the first section of the act, are unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial, or otherwise in violation of the provisions of the act. The word "opinion" must be interpreted with reference to the connection in which it is used in the law. It is only after full hearing upon complaint made that the law gives any weight or significance to the opinion of the commission; that is, it is only when the opinion results from the full hearing that it can be used as the basis of further action by the commission. It is true that in making up the opinion of the commission its members may

and it is their duty to call to their aid their knowledge and experience, but, if Congress had intended that the commission could make up its opinion from the knowledge and experience of its members independent of any evidence in the particular case, then it was idle to provide for a full hearing, as an opinion of the commission could be formed as well without as with the full hearing. A full hearing not only means an opportunity to be heard by the carrier, but an investigation by the commission itself of the lawfulness of the rate in question.

It is distinctly alleged in the language above quoted from the bill, which is admitted by the demurrer, that at the hearing which resulted in the making of the order complained of in this case no evidence was offered, heard, or introduced tending to show that the existing rates were unreasonable or unjust, but that said order was the result of mere conjecture and speculation.

[5] The allegation that there was no such evidence offered, heard, or introduced is an allegation of fact so far as the question of pleading is concerned, but whether or not there is at the close of a final trial any evidence to sustain a finding of fact made by a judicial or quasi judicial tribunal is always a question of law, which in a case like the one at bar this court has jurisdiction to determine. Ward v. Joslin, 186 U. S. 142, 147, 22 Sup. Ct. 807, 46 L. Ed. 1093; United States Fidelity & G. Co. v. Board of Com'rs, 145 Fed. 144, 151, 76 C. C. A. 114, 121; Laing v. Rigney, 160 U. S. 531, 540, 16 Sup. Ct. 366, 40 L. Ed. 525; Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; The Francis Wright, 105 U. S. 381, 387, 26 L. Ed. 1100; Clement v. Insurance Co., 7 Blatchf. 51, 53, 54, 58, Fed. Cas. No. 2,882; Fisher v. Scharadin, 186 Pa. 565–569, 40 Atl. 1091; Delaware, L. & W. R. Co. v. Converse, 139 U. S. 469, 472, 11 Sup. Ct. 569, 35 L. Ed. 213; Howe et al. v. Parker et al. (C. C. A. Eighth Circuit, opinion filed October 12, 1911) 190 Fed. 738.

The demurrer therefore, so far as it is general, will be overruled. So far as it is special it will be overruled as to paragraphs numbered 10, 11, 20, 21, 22, 25, 26, 27, 30, 31, 32, and 33, and sustained as to paragraphs numbered 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 28, and 29. It results that the motion to dismiss will also be denied. Leave to amend petition within 30 days is granted. The United States is granted permission to answer the original petition within 10 days, and to plead to the amended petition if one is filed within 10 days from the date of the service of a copy thereof.